# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9744 | **DATE** | 12/22/2003 |
| **CASE TITLE** | Burton vs. Mote | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order the Court concludes that petitioner is not entitled to habeas corpus relief. Petitioner's petition for habeas corpus relief is denied and this case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | **2** | | |
| | No notices required. | | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | DEC 23 2003 | | |
| | Notified counsel by telephone. | | | date docketed | | 22 |
| | Docketing to mail notices. | | | docketing deputy initials | | |
| ✓ | Mail AO 450 form. Mailed by MD. | | | 12/22/2003 | | |
| | Copy to judge/magistrate judge. | | | date mailed notice | | |
| MD | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 03 DEC 22 AM 8:31 FILED-TB-10 | Date/time received in central Clerk's Office | MD | mailing deputy initials | |

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DOCKETED

DEC 2 3 2003

| | | |
|---|---|---|
| United States of America | ) | |
| ex rel. ALNORAINDUS BURTON (#N-82030), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 01 C 9744 |
| | ) | Judge Joan H. Lefkow |
| STEVEN D. MOTE,[1] | ) | |
| Warden, | ) | |
| Pontiac Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

### MEMORANDUM OPINION AND ORDER

In his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, petitioner

Alnoraindus Burton ("Burton") challenges his convictions for first degree murder, aggravated

kidnapping and unlawful restraint entered in the Circuit Court of Cook County, Illinois. Burton

raises seventeen grounds for relief. For the reasons stated below, his petition is denied in its

entirety.

### HABEAS STANDARD

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this court

must deny Burton's petition for a writ of habeas corpus with respect to any claim adjudicated on

the merits in the state court unless the state court's decision "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States." 28 U.S.C. § 2254(d); *Price* v. *Vincent*, __ U.S. __, 123 S. Ct. 1848, 1852

---

[1]Steven D. Mote is currently the Warden at the Pontiac Correctional Center and is thus the proper
respondent in this habeas action. *See* Rule 2(a) of the Rules Governing Habeas Corpus cases under 28 U.S.C.
§ 2254. This court, therefore, hereby substitutes Mote as the respondent. *See* Fed. R. Civ. P. 25(d)(1).

22

(2003). A state court's decision is contrary to clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Williams* v. *Taylor*, 529 U.S. 362, 405 (2000)

A state court's decision is an unreasonable application of clearly established Supreme Court law "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* In order for a state court decision to be considered "unreasonable" under this standard it must be more than incorrect, it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway* v. *Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Schultz* v. *Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case.").

Before reviewing the state courts' decisions, however, the court must determine whether Burton fairly presented his federal claims to the state courts, as any claim not presented to the state's highest court is deemed procedurally defaulted. *O'Sullivan* v. *Boerckel*, 526 U.S. 838, 844-45 (1999). Moreover, "[a] federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment." *Moore* v. *Bryant*, 295 F.3d 771, 774 (7th Cir. 2002). A federal court may not grant habeas relief on a defaulted

2

claim unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman* v. *Thompson*, 501 U.S. 722, 750 (1991); *Anderson* v. *Cowen*, 227 F.3d 893, 899 (7th Cir. 2000).

## BACKGROUND

### A. Procedural History

Following a jury trial, Burton was convicted in the Circuit Court of Cook County of first degree murder, aggravated kidnapping and unlawful restraint. He was sentenced to life imprisonment for murder and 15 years imprisonment for aggravated kidnapping, with the sentences to be served consecutively. Burton appealed, arguing (1) he was not proven guilty of aggravated kidnapping beyond a reasonable doubt; (2) that the State improperly injected gang membership into its case-in-chief; and (3) that the State improperly shifted the burden of proof to him in the examination of an expert witness. On September 9, 1994, the Illinois Appellate Court affirmed the judgment and sentence on direct appeal. The Illinois Supreme Court denied Burton's petition for leave to appeal on October 4, 1995.

At some point in 1991, Burton filed a petition for post-conviction relief. He later filed supplemental post-conviction petitions in December 1995, August 1996, September 1996, October 1996 and April 1997. The Circuit Court granted the State's motion to dismiss the petitions in July 1997. On December 26, 2000, the Illinois Appellate Court affirmed the dismissal of Burton's post-conviction petitions. On October 3, 2001, the Illinois Supreme Court denied Burton's petition for leave to appeal. Burton filed this habeas petition thereafter on December 20, 2001. Because this petition was filed within one year after the conclusion of his

3

Illinois post-conviction proceedings, this court has jurisdiction to consider Burton's habeas

petition. *See* 28 U.S.C. § 2244(d)(1)(A); *Gray* v. *Briley*, 305 F.3d 777-78 (7th Cir. 2002).

## B.    Facts

When considering a habeas petition, the court must presume that the state courts' factual

determinations are correct unless the petitioner rebuts the presumption by clear and convincing

evidence. *See* 28 U.S.C. § 2254(e)(1); *Todd* v. *Schomig*, 283 F.3d 842, 846 (7th Cir. 2002).

Burton has not presented clear and convincing evidence to rebut this presumption. Therefore, the

court adopts the Illinois Appellate Court's recitation of facts in *People* v. *Burton*, No. 91-2811,

slip op., at 1-7 (1st Dist. 1994) (unpublished order) (Resp. Ex. A.) (*Burton I*) and *People* v.

*Burton*, No. 97-4134, slip op. at 4-9 (1st Dist. 1997) (unpublished order) (Resp. Ex. J) (*Burton II.*)

Marcus Shaw ("Shaw"), the prosecution's chief witness, testified that he had known both

Burton and the deceased victim, Anthony Watkins ("Watkins"), for about 15 years.[2] He testified

that all three were members of the Disciples street gang. Shaw testified that on January 19, 1989,

at around 10:00 a.m., he went to Burton's home and saw co-defendant, Mackel Washington

("Washington"), pointing a gun at Watkins.[3] At this time Watkins was not wearing a coat, shoes

or a hat. Shaw testified that Burton told Washington to give Watkins his clothes back and allow

him to get dressed. All of the men then went into Burton's basement, and Burton and Watkins

spoke briefly, although Shaw could not hear the conversation.

---

[2] Shaw had been originally charged with murder and aggravated kidnapping in this case, but in exchange for his testimony, he was offered the opportunity to plead guilty to aggravated kidnapping and conspiracy to commit murder. In return, he received a 15 year prison sentence.

[3] Shaw testified that he believed Washington was also a member of the Disciples street gang, but that he had only met him two days earlier.

The four men then left Burton's home and drove to Burton's grandmother's apartment. Washington was the driver with Shaw in the passenger seat, while Burton rode with Watkins in the back seat. After arriving at the apartment, Shaw and Washington stayed in the front room while Burton and Watkins engaged in a discussion in another room. Shaw testified that Burton asked Watkins to get some cocaine for him and Watkins responded that he could not do that. Burton left the room, went to the back part of the apartment and when he returned, he had some cord or wire. Burton told Shaw and Washington that they would tie Watkins up. Burton was binding Watkins' hands, during which time Watkins attempted to free himself and jumped from a chair, hitting Shaw in the mouth with his fist. Burton then forced Watkins in the chair, tied his hands behind him and tied his feet. Shaw retrieved a crowbar from the rear of the apartment and hit Watkins on the back of the head. Watkins "bounced" against the window. Thereafter, Washington pushed Watkins out of the window.

Watkins fell two floors onto the concrete below. Shaw, Burton and Washington ran downstairs to where Watkins was lying on the ground. Burton put Watkins in the back seat of the car. Once again, Washington drove with Shaw in the front passenger seat while Burton was in the back with Watkins. As Washington drove down the alley, Shaw heard a gunshot and turned around to see Burton pointing a gun at Watkins. Burton was holding Watkins down towards the floor of the car. Watkins was bleeding from the top of the lip. As Washington stopped the car, Burton pushed Watkins out onto the ground. Washington then drove 10 to 15 feet but Burton told him to stop. Burton and Shaw got out and went back to Watkins while Washington stayed in the car. Burton dragged Watkins into a random garage that was left open, while Watkins begged for his life. Burton then shot Watkins in the head. Thereafter, Burton and

5

Shaw ran back to the car. They drove to Burton's cousin's home and Burton changed his coat or shirt. Afterwards, Burton, two of his cousins, Washington and Shaw went to McDonald's, and they later dropped Shaw off at his home.

Watkins' body was found by the garage owner on January 29, 1989. Burton was arrested on January 30, 1989 at his mother's home. Shaw was arrested in February 1989. He gave a statement describing the above stated events to the police and the state's attorney. During an investigation of Burton's grandmother's apartment, police detectives found bloodstains, overturned chairs, a crowbar and wires on the floor. Also, one of the chairs near the window was "busted out."

## DISCUSSION

Burton's § 2254 petition contains seventeen claims:

(1) his arrest in his home was without probable cause and in violation of his Fourth Amendment rights;

(2) he was deprived of his constitutional right to Due Process and Equal Protection because he was illegally forced to stand in a police lineup against his will and without legal representation;

(3) his confession was illegally obtained by means of threats and physical force in violation of his rights to Due Process;

(4) a Chicago police detective committed perjury at Burton's hearing on his motion to quash arrest and suppress evidence when he testified that he was aware of an arrest warrant on January 28, 1989 for escape;

(5) he was deprived of his constitutional right to Due Process and Equal Protection when members of the Chicago Police Department used physical force and threats to coerce Anthony

6

Smith ("Smith") and Elmore Theodore ("Theodore") to give false testimony against him;

(6) he was deprived of his constitutional right to Due Process and Equal Protection when he was prosecuted by Cook County Assistant State's Attorneys because they were employees of the County and were not acting as authorized agent's of the State of Illinois;

(7) he was deprived of his constitutional right to Due Process and Equal Protection because the prosecution relied on the perjured testimony of Marcus Shaw in convicting him;

(8) his trial counsel was ineffective for (a) failing to properly investigate his motion to quash arrest and (b) failing to file a motion for discharge under the Illinois Speedy Trial Act;

(9) he was denied his right to the effective assistance of appellate counsel where counsel failed to review the transcript and raise issues regarding the motion to quash and suppress;

(10) the trial court erred when it denied his pre-trial motion to quash arrest and suppress evidence in violation of his right to Due Process;

(11) the trial court erred when it denied his pre-trial motion to suppress his statements in violation of his right to Due Process guaranteed by the Fifth, Sixth and Fourteenth Amendments;

(12) the trial court abused its discretion when it denied his post-conviction petition without an evidentiary hearing and granted the State's motion to dismiss which had been pending for 6½ years;

(13) he was sentenced in violation of *Apprendi* v. *New Jersey*, 530 U.S. 466 (2000);

(14) his consecutive sentences were unconstitutional based on *Apprendi*;

(15) he was not proven guilty of aggravated kidnapping beyond a reasonable doubt;

(16) he was denied a fair trial because the prosecutors were permitted to inject in their case-in-chief that he and all other participants in the crime were gang members; and

(17) he was denied his right to a fair jury trial because the prosecution shifted the burden of proof

in its examination of its own expert witness.

A.     *Claims 1-5, 8(b), 10-11 and 16*

Each of these claims is procedurally defaulted. Starting with claims 1-4 and 8(b), the

post-conviction court held that each was waived by Burton's failure to raise these issues on direct

appeal. (*See* Exhibit E, trial court order, p. 4.) *See also, People* v. *Coleman*, 168 Ill. 2d 509,

522, 660 N.E. 2d 919, 927 (1995) (in post-conviction review, "issues that could have been raised

on direct appeal but were not are waived."). The post-conviction appellate court agreed and

subsequently affirmed. (*See* Exhibit J, Burton II, p. 16-17.)[4] Claim 5 was addressed by the post-

conviction trial court, although the post-conviction appellate court held that Burton knew of the

alleged false testimony prior to trial and waived the issue by not presenting it on direct review.

Under Illinois law, waiver is an independent and adequate state court ground. *See Wright* v.

*Walls*, 288 F.3d 937, 947 (7th Cir. 2002). Similarly, for claims 10 and 11, these claims were not

raised in either Burton's direct appeal or his post-conviction proceedings. Since these claims

were never presented to the state courts, they are procedurally defaulted. *E.g., O'Sullivan*,

526 U.S. at 844-45 ("Comity thus dictates that when a prisoner alleges that his continued

confinement for a state court conviction violates federal law, the state courts should have the first

opportunity to review this claim and provide necessary relief."). Finally, as for claim 16, while

this claim was raised on direct appeal, the Illinois Appellate Court noted that Burton "neither

---

[4]The court notes that for claim 2, while the post-conviction trial court noted that the claim was waived, and the post-conviction appellate court noted this ruling, nevertheless, the post-conviction appellate court did not specifically address this claim. In any event, the last state court that addressed it found the claim to be waived, which was subsequently affirmed.

objected at trial nor raised the issue of the improper prosecutorial remarks in his post-trial motion for a new trial." *(Burton I*, p. 10.) Thus, the court held that Burton had "waived his right to object to those comments" and that the "plain error" doctrine under Illinois law did not apply. This is also an independent and adequate state court ground and again illustrates procedural default.

Burton could have overcome the above procedural defaults by establishing either (1) cause for the failure to follow the state procedure and actual prejudice which resulted or (2) that the default results in a fundamental miscarriage of justice. *Edwards* v. *Carpenter*, 529 U.S. 446, 451 (2000). Cause exists when "the petitioner can demonstrate that some objective factor external to the defense hindered his ability to comply with a state's procedural rule." *Cloutier* v. *Mote*, No. 00 C 5476, 2003 WL 76867, at *9 (N.D. Ill. Jan. 8, 2003) (citing *Murray* v. *Carrier*, 477 U.S. 478, 488 (1986)). A fundamental miscarriage of justice exists if Burton could bring forth "new and convincing evidence of his innocence by showing that it is more likely than not that no reasonable juror would convict him in light of the new evidence. *Id.* (citing *Schlup* v. *Delo*, 513 U.S. 298, 324 (1995)).

Burton alleges no objective factor that hindered his ability to comply with any state procedural rule for claims 1, 3, 4 and 16. As for claims 2, 5, 10 and 11, Burton argues that the failure to raise these claims on direct appeal was as a result of ineffective assistance of appellate counsel. Cause for procedural default may be demonstrated when "counsel's performance was so deficient as to violate the Sixth Amendment guarantee of effective assistance of counsel." *Morrison* v. *Duckworth*, 898 F.2d 1298, 1300 (7th Cir. 1990) (citing *Murray*, 477 U.S. at 488)). In such cases, however, "principles of comity 'generally require[] that a claim of ineffective

assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Momient-El* v. *DeTella*, 118 F.3d 535, 541-42 (7th Cir. 1997) (bracket in original) (quoting *Murray*, 477 U.S. at 489). As the Supreme Court explained in *Murray*,

> The principle of comity that underlies the exhaustion doctrine would be ill served by a rule that allowed a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, and that holds true whether an ineffectiveness claim is asserted as cause for a procedural default or denominated as an independent ground for habeas relief.

477 U.S. at 489; *see also, Momient-El,* 118 F.3d at 541-42 (in determining whether cause based on ineffectiveness assistance of counsel existed to overcome procedural default on claim for sentencing issue, noting that petitioner had to argue before the state court that the failure to raise this specific sentencing issue was ineffective assistance of counsel).

Burton did assert at the post-conviction stage an ineffective assistance of counsel claim. He argued that his appellate counsel did not raise certain post-conviction claims on direct appeal. While the court cannot discern from the record whether in fact Burton raised ineffective assistance claims based on the failure to raise the specific claims at issue here, *i.e.*, that he was illegally forced to stand in a line-up, that testimony was elicited from Smith and Theodore by physical force and threats, and that the trial court incorrectly denied his pretrial motion to quash arrest and suppress evidence, nevertheless, the post-conviction trial court applied the correct test and its judgment was neither contrary to or an unreasonable application of federal law. The court correctly noted the two pronged test applied by *Strickland* v. *Washington*, 466 U.S. 668 (1984), and stated that appellate counsel had no obligation to raise every conceivable argument which might be made and its judgment to exclude these claims was not "patently erroneous." The court

10

also noted that Burton had not specifically alleged how he had been prejudiced by counsel's errors. Burton points to no opposite conclusion reached by the Supreme Court on a question of law or a Supreme Court case with facts that are materially indistinguishable from those here. Moreover, the post-conviction trial court's application of *Strickland* certainly did not lie "well outside the boundaries of permissible differences of opinion." *Hardaway*, 302 F.3d at 762. Burton cannot, therefore, use ineffective assistance of counsel to show cause and overcome his procedural defaults. Because Burton cannot establish cause, the court need not address any actual prejudice. *See Momient-El*, 188 F.3d at 542 n.7.

Finally, Burton presents no new exculpatory evidence sufficient to show that no reasonable juror would convict him. Thus, he also cannot establish a fundamental miscarriage of justice. As such, Burton cannot overcome these procedural defaults, and no relief can be afforded under claims 1-5, 8(b) 10-11 and 16.[5]

---

[5]In his reply brief, Burton argues that "[a]n evidentiary hearing is required where the State court's waiver rule was applied." He cites *Harris v. Reed*, 489 U.S. 255 (1988), although *Harris* does not make such a holding. Since Burton does not request an evidentiary hearing until his reply brief, he has waived his claim. Nevertheless, under § 2254(e)(2), if the factual basis of a claim has not been developed in the State court proceedings, the court "shall not hold an evidentiary hearing" unless the petitioner can show:

> (A) the claim relies on-
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the existence of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). Burton has failed to argue any facts which would support this standard for these claims, so an evidentiary hearing is unnecessary.

*B.*    *Claim (6): Deprivation of Due Process and Equal Protection because the Cook County Assistant State's Attorneys were not authorized agents of the state.*

Burton claims that he was deprived of his constitutional rights to Due Process and Equal Protection because he was illegally prosecuted by Cook County Assistant State's Attorneys, who were not authorized agents of the State. The post-conviction trial court addressed this issue, referring to it as "ludicrous and wholly without merit." The post-conviction appellate court noted this issue in affirming the trial court but it presented no analysis. Without addressing whether a violation of federal law is actually presented by this claim, the court notes that the post-conviction trial court correctly ruled that the State's Attorney is a constitutional officer and is part of the executive branch of the State government. Ill. Const. 1970, Art. VI, sec. 19; 55 ILCS 5/3-9005; *Ingemunson* v. *Hedges*, 133 Ill. 2d 364, 369, 549 N.E. 2d 1269, 1272 (1990) ("The debates of the Sixth Illinois Constitutional Convention of 1969-70 indicate that the drafters of our present constitution agreed with the decision in *Hoyne* [v. *Danisch*, 264 Ill. 467, 106 N.E. 341 (1914)] that State's Attorneys should be classified as State rather than county, officials."). Claim (6), therefore, is denied on the merits.

*C.*    *Claim (7): Deprivation of Due Process and Equal Protection because of perjured testimony by Marcus Shaw.*

For his next claim, Burton argues that he was deprived of his rights to Due Process and Equal Protection because the prosecution relied on the perjured testimony of Marcus Shaw. Moreover, he argues that the prosecution also failed to correct the testimony of Shaw that he was not given anything in exchange for his testimony. Shaw's affidavit supports Burton's claim, as Shaw averred that he "was a witness to a murder that he didn't know nothing about," and "the State was going to give [him] natural life or the death penalty if [he] didn't help them." The

12

post-conviction trial court addressed this claim and found that the affidavit was inherently unreliable. The appellate court agreed and affirmed on grounds that there were no facts presented in the affidavit that would give the recantation an indicia of reliability or credibility. (*Burton II*, p. 12-13.)

The Due Process clause is violated when a prosecutor introduces testimony against a defendant that the prosecutor knows is false. *E.g.*, *Giglio* v. *United States*, 405 U.S. 150, 153 (1972); *Buie* v. *McAdory*, 341 F.3d 623, 625 (7th Cir. 2003). The post-conviction trial court recognized this but, applying Illinois law, found that Shaw's affidavit was conclusional in nature and not supported by further allegations of specific facts. The court ruled that Shaw's affidavit was, therefore, "inherently unreliable" and should dismissed without even the benefit of an evidentiary hearing. The post-conviction appellate court, also relying in Illinois law, affirmed. It first distinguished cases where evidentiary hearings have been granted and ruled that "there are no facts presented in the affidavits that would give these recantations an indicia of reliability or credibility." (*Burton II* (citing *People* v. *Steidl*, 142 Ill. 2d 204, 568 N.E. 2d 837 (1991).) Significantly, both courts relied on state and not federal law in determining whether an evidentiary hearing was necessary. Given that the State has no constitutional obligation to afford post-conviction review in the first place, *see Pennsylvania* v. *Finley*, 481 U.S. 551, 556 (1987) (citing *United States* v. *MacCollom*, 426 U.S. 317, 323 (1976), the failure to grant an evidentiary hearing cannot deprive Burton of any constitutional rights. *Cf. Finley*, 481 U.S. at 557-58 (1987) (no constitutional right to counsel on post-conviction review because "States have no obligation to provide this avenue of relief . . . and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well."). Thus, this court

has no grounds to call the post-conviction appellate court's ruling contrary to or an unreasonable application of federal law.

Burton's request for relief on this claim is clear: because of his alleged violations of due process he seeks that his conviction be reversed. It is not until his reply brief that Burton requests an evidentiary hearing on this claim, and he presents no argument as to why this claim deserves such a hearing. While the court construes Burton's petition liberally because he proceeds *pro se*, argument made for the first time in a reply brief are waived. *E.g.*, *Wilson* v. *Giesen*, 956 F.2d 738, 741 (7th Cir. 1992) (*pro se* prisoner waived argument on appeal by failing to raise it until the reply brief); *United States* v. *Carrasco*, No. 99 C 559, 1999 WL 286083, at *2 n.2 (N.D. Ill. April 29, 1999) ("A *pro se* habeas petitioner's arguments presented for the first time in a reply brief are deemed waived."); *Smith* v. *Gilmore*, No. 96 C 3481, 1997 WL 61446, at *15 n. 10 (N.D. Ill. Feb. 6, 1997) ("The Court need not consider arguments raised for the first time in a reply brief, even one filed by a *pro se* petitioner."); *United States* v. *Joiner*, 847 F. Supp. 604, 607 (N.D. Ill. 1994) *aff'd* 78 F.3d 586 (7th Cir. 1996).

Even if Burton had properly raised and argued for an evidentiary hearing, and even if the court credited him with fully developing the record in state court and applied the pre-AEDPA standard for an evidentiary hearing ("if the petitioner has alleged facts that would entitle him to relief and the state court for reasons beyond his control, did not consider his claim in a full and fair hearing," *Hampton* v. *Leibach*, 347 F.3d 219, 234 (7th Cir. 2003)), the court still believes an evidentiary hearing is unwarranted because no reasonable finder of fact could find Shaw's recantations believable. First, the Seventh Circuit has already stated that "[d]isbelief of recantations is sensible" because the "formality of the court, the presence of the litigants, and the

14

gaze of the judge induce witnesses to hew more closely to the truth than they do when speaking in private and attempting to appease the losing side's advocate" and because such disbelief "protects witnesses after the trial, and . . . promotes truthful testimony during trial." *Mendiola* v. *Schomig*, 224 F.3d 589, 593 (7th Cir. 2000). Second, Shaw's recantations are contradicted by other arguments made by Burton in his petition and on his direct review, as Shaw's testimony at trial (and not in his affidavit) was corroborated by physical and medical evidence (*See* petition, pg. 47 ("Admittedly, the murder conviction also rests on Shaw's testimony, but that conviction was corroborated by physical and medical evidence.")). Third, as both the post-conviction trial and appellate courts found, the affidavit itself is factually barren and inherently unreliable. It does not recount in detail the circumstances and context in which Shaw informed prosecutors of the "true" story or that Shaw informed them that the story he was telling was false. *See Mendiola*, 224 F.3d at 596 (Rovner, J. dissenting) (recantation "set forth in detail when and why [witness recanted] as well as the circumstances and content of the conversation in which she disclosed this information to the prosecutor."). Fourth, the recantation is supplied by a co-defendant whose motivation is very clear from the face of the affidavit, as Shaw stated that the State "promised [him] things that [it] never followed through with." Finally, the recantation was not contemporaneous or at any point even near when Shaw gave his testimony at trial in 1991. Instead, the affidavit was not actually filed until August 30, 1996 and not until Burton filed a *pro se* supplement to his post-conviction petition. For these reasons, no reasonable finder of fact could find the recantations believable and an evidentiary hearing is unwarranted.

Accordingly, no relief can be afforded to Burton under his seventh claim.

*D.*     *Claim (8)(a): Ineffective assistance of trial counsel for failure to investigate motion to*
         *quash arrest.*

For part (a) of his eighth claim, Burton claims that his trial counsel was ineffective

because he failed to properly investigate Burton's motion to quash arrest. This is similar to the

argument Burton raised in claim (4) that no arrest warrant existed for him on January 28, 1989

and that a Chicago Police Detective lied about the presence of such a warrant. According to

Burton, Detective Kelly testified at the hearing on the motion to quash arrest that Burton's name

came up in the course of the investigation of Watkins' murder, and that Kelly stated that he

checked a police computer and saw that a warrant was issued for Burton's arrest on charges of

escape. Although the parties are not entirely clear, this warrant apparently served as the basis of

Burton's arrest. However, the warrant was not produced at the suppression hearing on the

motion to quash arrest. Burton believes that Kelly's testimony must have been false, and as

proof attaches a warrant for his arrest on charges of escape dated March 2, 1989, which was after

Burton's arrest on January 30, 1989. Burton uses this warrant to establish that no warrant existed

in January 1989 and that Kelly must have been lying at the hearing on the motion to quash arrest.

He believes that his trial counsel's failure to properly investigate whether an arrest warrant

existed was ineffective assistance of counsel.

The post-conviction trial court properly identified the two-part test employed in

ineffective assistance of counsel claims. It stated that Burton was required to show that his trial

counsel's representation fell below an objective standard of reasonableness and that a reasonable

probability existed that the result of the proceedings would have been different absent this

inadequate representation. *Strickland* v. *Washington*, 466 U.S. 668 (1984). The post-conviction

court addressed this claim generally and ruled that Burton did not establish a reasonable probability that a different result would have been obtained had counsel properly investigated this claim. The post-conviction appellate court noted the trial court's ruling in its opinion, although, for whatever reason, it did not address this claim during its review.

If Burton's claim was not for ineffective assistance of counsel but instead related only to his allegedly false arrest, "it would be largely academic by now." *Holman* v. *Page*, 95 F.3d 481, 488 (7th Cir. 1996). In *Stone* v. *Powell*, 428 U.S. 465 (1976), the Supreme Court ruled that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Id.* at 494. A petitioner is provided, however, a "narrow walkway" to raise Fourth Amendment issues "through the back door via a Sixth Amendment claim that his attorney's handling of the issue . . . was incompetent." *Holman*, 95 F.3d at 489 (citing *Kimmelman* v. *Morrison*, 477 U.S. 365, 382-83 (1986)). The focus is on "not whether the Fourth Amendment issue was properly decided, which on habeas review *Stone* precludes, but whether the defendant was denied his Sixth Amendment right to competent counsel." *Id.*

The issue here is whether Burton's trial attorney was ineffective because he failed to properly investigate the issues surrounding Burton's motion to quash arrest. Under *Strickland* Burton was required to show both "(1) deficient performance and (2) prejudice." *Id.* at 490 (citing *Lockhart* v. *Fretwell*, 506 U.S. 364, 368 (1993)). In Fourth Amendment cases, the "prejudice" prong of the *Strickland* test "is not met 'if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him.'" *Id.*

17

(quoting *Fretwell*, 506 U.S. at 372.) The Seventh Circuit has expressly ruled that under *Strickland* "no prejudice exists when evidence gathered in violation of the Fourth Amendment is erroneously admitted at trial." *Id.* at 492. "It is inconsistent with the function of the exclusionary rule to permit a criminal defendant on federal habeas review to claim prejudice because but for counsel's incompetence on the suppression issue he would have gotten away with the crime." *Id.* at 491. Instead, a counsel's alleged ineffective assistance at a suppression hearing on a Fourth Amendment issue can only be relevant to counsel's "overall incompetence" and must render the proceedings "unfair or unreliable." *Id.* at 492.

Based on *Holman*, even if Burton were able to show his trial counsel's performance was deficient in failing to investigate the motion to quash arrest, he could not make out the required element of prejudice. Initially, as respondent points out, Burton fails to point to any evidence which would have been excluded if his motion to quash arrest were granted. Instead he merely states that "had [his attorney] properly investigated the alleged arrest warrant [Burton's] criminal proceedings would have been different." Moreover, even if Burton had pointed to evidence that would have been excluded, Burton's claimed prejudice is exactly what *Holman* forbids. He complains that his counsel's failure to investigate cost him the chance to suppress evidence based on the exclusionary rule. Under controlling law, this is not sufficient to establish prejudice under *Strickland*. Finally, there is no evidence that the handling of the Fourth Amendment issues at the suppression hearing were otherwise evidence of "overall incompetence" rendering the proceedings unfair or unreliable. Accordingly, no relief can be afforded to Burton under claim 8(a).

E.     Claim (9): Ineffective assistance of appellate counsel for failure to review the transcript and raise issues regarding the motion to quash arrest and suppress.

Under claim (9) Burton argues that his appellate counsel was ineffective because he failed to review the transcript and raise issues regarding Burton's motion to quash arrest and suppress. This claim fails for the same reason as claim (8)(a). Burton alleges that his appellate counsel was ineffective for not raising issues related to his motion to quash arrest and suppress. Since this is an ineffective assistance of counsel claim concerning Fourth Amendment rights raised on federal habeas review, it is insufficient under the prejudice prong of the *Strickland* test for Burton to argue that were it not for counsel's incompetence he would have suppressed evidence based on the exclusionary rule. Indeed, this was exactly the situation in *Holman*, where the Seventh Circuit rejected the petitioner's argument that his appellate counsel was ineffective for failing "to challenge the admission of his post-arrest statements on appeal . . . ." 95 F.3d at 484. Moreover, there is no evidence suggesting that the handling of this Fourth Amendment issue is probative toward "overall incompetence" and otherwise contributed to a unfair or unreliable verdict. Therefore, no relief can be afforded under claim (9).

F.     Claim (12): The trial court abused its discretion when it denied his post-conviction petition without an evidentiary hearing and granted the State's motion to dismiss.

Burton argues that the state trial court abused its discretion when it denied his post-conviction petition without an evidentiary hearing and granted the State's motion to dismiss. Similar to Burton's argument in claim (7), claim (12) is not raised in constitutional terms and no relief can be afforded by this court in habeas review. Interpreting state law, the post-conviction appellate court determined that the only evidence in support of an evidentiary hearing was Shaw's affidavit, which was conclusional and inherently unreliable. There is no violation of

19

Burton's constitutional rights under such circumstances. *Cf. Finley*, 481 U.S. at 558-59 (no constitutional right to counsel on post-conviction review because "States have no obligation to provide this avenue of relief . . . and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well."). The decision not to hold an evidentiary hearing did not infringe on any of Burton's constitutional rights, and certainly in no way can be viewed as contrary to or an unreasonable application of federal law. As such, no relief can be afforded on claim (12).

G.     *Claims (13) and (14): Sentencing in violation of Apprendi v. New Jersey.*

Burton next claims that his sentence violated the Supreme Court's opinion in *Apprendi* v. *New Jersey*, 530 U.S. 466 (2000), because he was sentenced to natural life and consecutive sentences under a statute he believes *Apprendi* made unconstitutional. Respondent argues in response that neither of these claims were properly raised on either direct or post-conviction review. However, Burton could not have raised this claim on direct or post-conviction review because *Apprendi* was decided in 2000, well after Burton's direct review and most of his post-conviction review. In any event, these claims still fail because Burton was sentenced well before June 26, 2000. *Apprendi* does not apply retroactively on collateral review. *See, e.g., Curtis* v. *United States*, 294 F.3d 841, 844 (7th Cir. 2002) ("*Apprendi* therefore does not disturb sentences that became final before June 26, 2000, the date of its release."). As such, Burton's request for relief on these claims must be denied.

*H.*     *Claim 15: Whether Burton was proven guilty for aggravated kidnapping beyond a reasonable doubt.*

For his fifteenth claim, Burton argues that he was not proven guilty of aggravated kidnapping beyond a reasonable doubt. In federal habeas corpus review, a petitioner may establish a violation of due process on a claim of insufficient evidence only when, viewing the evidence in a light most favorable to the prosecution, no rational trier of fact "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson* v. *Virginia*, 443 U.S. 307, 319 (1979).

Burton raised this claim on direct review. The appellate court addressed the law on kidnapping and noted that it is committed

> when an accused knowingly and secretly confines another against his will (People v. Hopkins (1992), 247 Ill. App. 3d 951, 618 N.E. 2d 279) or by force or threat of imminent force carries another from one place to another with intent secretly to confine him against his will (Ill. Rev. State 1987, ch. 38, par. 10-1(a)(1), (a)(2).) Aggravated kidnapping occurs when the confinement is accompanied by the infliction of great bodily harm or the commission of another felony upon the victim. Ill. Rev. Stat. 1987, ch. 38 par. 10-2(a)(3); People v. Hopkins.

(*Burton I*, p. 8.) In viewing the evidence in a light most favorable to the prosecution, the court found that

> the jury's determination that [Burton] committed aggravated kidnapping [was] proper where the evidence clearly shows that the victim had been knowingly and secretly confined against his will by force or threat of force. Using force, [Burton] bound the deceased's feet in the apartment at 5730 S. May. Subsequent to his being bound, the deceased was hit over the head with a crowbar, pushed from a second floor window and dragged to the offenders' car where he was placed in the rear seat. Thereafter, enroute to Gee's garage, defendant held the deceased's head down to the floor of the car, out of view, and shot him in the jaw. Defendant subsequently dragged the deceased into Gee's garage and shot him in the head. When the deceased was later found in the garage, he was lying in a pool of blood with his hands and feet tied.                    ***

21

Based on the above, we are unpersuaded by [Burton's] argument that the element of force employed was too insubstantial to support a separate conviction for aggravated kidnapping. Despite [Burton's] assertion that the evidence shows the victim voluntarily accompanied [Burton] to 5730 S. May proving that no force existed, we find that such evidence does not require this court to reverse his conviction where the remaining evidence adduced at trial amply supports a finding of force.

Nor are we persuaded by defendant's assertion that he conduct was incidental to the conduct comprising the murder. The deceased suffered severe physical injuries apart from the multiple gunshot wounds to the head which caused his death. Furthermore, the evidence reveals that [Burton] intended to kidnap the deceased if he refused to comply with [Burton's] requests concerning narcotics.

(*Burton I*, 8-10.)

This Illinois Appellate Court's decision pointed to sufficient evidence from which a jury could conclude that Burton committed aggravated kidnapping, and Burton falls well short of the strict *Jackson* standard that "no rational trier of fact" could have found him guilty. Therefore, claim (15) is denied.

I.    *Claim (17): Denied right to a fair trial because the prosecution shifted the burden of proof in its examination of its expert witness.*

Burton argues he was denied his right to a fair trial because the prosecution shifted the burden of proof in its examination of its own expert witness, a serologist, by asking her during redirect examination if the defense had requested further testing of the blood samples admitted into evidence. At trial, Burton's counsel asked the State's expert witness if the State had requested that she do any DNA or electrophoresis testing, and she stated that it had not done so. On redirect, the prosecutor asked whether the defense had in fact requested such testing. The trial court overruled defense counsel's objections on grounds that "[y]ou asked the questions the State is trying to rebut right now." (*Burton I*, p. 12.) In addressing this issue, the Illinois

Appellate court noted that under Illinois law a trial court is afforded broad discretion on decisions involving questions on cross-examination and redirect and a reviewing court will not disturb those decision unless there is "a clear abuse of discretion which results in a manifest prejudice to defendant." (*Burton I*, p. 11.)

Burton fails to identify any constitutional right which has been infringed. *E.g.*, *Bocian* v. *Godinez*, 101 F.3d 465, 471 (7th Cir. 1996) ("A petitioner now 'must be able to point to an authoritative decision of the Supreme Court in order to secure a writ.'") (quoting 28 U.S.C. § 2254(d)(1)). Indeed, his claim is based on the evidentiary ruling under State law. "[S]tate court evidentiary rulings, because they are a matter of state law, will rarely serve as a proper basis for granting a writ of habeas corpus." *Haas* v. *Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990). "[A] federal court can issue a writ of habeas corpus on the basis of a state court evidentiary ruling only when that ruling violated the defendant's right to due process by denying him a fundamentally fair trial." *Milon* v. *Camp*, 22 F.3d 693, 702 (7th Cir. 1994). Allowing the prosecution to ask two questions concerning whether the defense requested DNA testing, which the trial court allowed because the defense counsel opened the door to such inquiry, falls well short of denying Burton a fundamentally fair trial. Claim (17) is, therefore, denied.

## CONCLUSION

Wherefore, for all the above stated reasons, the court concludes that Burton is not entitled to habeas relief. This case is terminated.

ENTER: _Joan H Lefkow_

JOAN HUMPHREY LEFKOW
United States District Judge

Dated: December 22, 2003

23